Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4199 | **DATE** | 7/10/2003 |
| **CASE TITLE** | Belinda Dupuy, et al vs. Jess McDonald, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 11 2003 date docketed | 443 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/10/2003 | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | date mailed notice | |
| ETV courtroom deputy's initials | | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

BELINDA DUPUY, et al., )
)
    Plaintiffs, )
)
v. ) No. 97 C 4199
)
JESS McDONALD, et al., ) Judge Rebecca R. Pallmeyer
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Many months ago, this court concluded that Plaintiffs, a class of child care workers, are entitled to an injunction against continued violations of their due process rights by agents of the Illinois Department of Children and Family Services ("DCFS"). See *Dupuy v. McDonald*, 141 F. Supp. 2d 1090 (N.D. Ill. 2001). The court declined to craft specific terms for the injunction, however, and invited the parties to submit their own proposed orders. Neither side's draft was completely satisfactory, however, so the court initiated a negotiation process, hoping the parties could reach agreement to at least some terms of the injunction in mediation sessions with the court.

The negotiation process was largely productive. The parties agreed to forms to be issued to individuals named as subjects of child abuse or neglect investigations. They reached some agreement concerning notices to employers concerning employees or applicants who are the subject of indicated reports. Perhaps most important, they reached agreement on some aspects of a process for review by a DCFS administrator of an investigator's recommended "indicated" finding, prior to recording of such a finding on the State Central Registry and resulting disclosure to employers. They also discussed a proposal for an expedited review of such findings for certain child care workers.

Certain disputes remained, however, and the court will address those here.

## I. Definitions

Plaintiffs have proposed inclusion of 16 definitions, 11 of which Plaintiffs characterize as "position neutral." The court recognizes the value of precision but is not persuaded that detailed definitions are necessary. To the contrary, in this court's experience, a short and plain order is more readily understood and enforced. The court notes, further, that although the parties to this case have disagreed and continue to disagree about numerous issues, both sides are represented by lawyers with vast experience in the child welfare system, and their disagreements rarely related to the meaning of various terms. Thus, the court declines to adopt Plaintiffs' proposed definitions.

## II. Persons Entitled to Expedited Relief

The court concluded, for the reasons stated in its earlier opinion, that the pursuit of work in one's chosen profession—in this case, child care—constitutes a recognizable and protected liberty interest. *Dupuy*, 141 F. Supp. 2d at 1134. The court's opinion reflects its understanding that Plaintiffs' motion sought preliminary injunctive relief on behalf of child care workers, including day care providers, foster care givers, and child welfare employees such as social workers. *Id.* at 1131. Plaintiffs' preliminary injunction motion defined class members broadly to include these categories of workers and, in addition, "school employees" and other class members "employed or otherwise engaged in an activity resulting in frequent contact with children." Defendant now objects to the inclusion of certain groups that Plaintiffs believe should benefit from the relief ordered by this court or agreed to by Defendant.[1]

In addressing this concern, the court notes, first, that significant aspects of the relief sought by Plaintiffs will be available to all those whom DCFS regulates, not just class members.

---

[1] Specifically, Plaintiffs assert that Defendant has objected to any relief for school teachers and administrators, applicants for child care positions or for child care licenses, day care workers who do not work for DCFS licensed facilities, and persons pursuing a career in child care.

2

Defendant has agreed to changes in the form of notice directed to any individual who is the subject of a report of child abuse or neglect. Further, as discussed in the court's opinion and in the joint negotiation sessions, the court will order a change in the standard for "indicating" such reports. This change, too, will benefit all persons who are the subject of such reports, whether or not they are members of the certified class. The court expects that its order will result in vastly improved compliance with DCFS's own rule requiring that appeals be decided in 90 days, a change which will benefit all charged parties as well as their victims. Finally, the court presumes that changes in DCFS's practice of redacting investigative files will apply across-the-board to all persons who are the subject of investigations; that is, the court presumes that DCFS will not follow different file preparation protocols, depending on the status of the individual seeking review.

The more significant dispute is whether and to what extent certain child care workers will be entitled to the additional pre-deprivation administrative hearing and expedited review proceeding which the parties discussed at length during their negotiation sessions. Plaintiffs concede that tenured public school teachers are protected against loss of their jobs as a result of indicated reports against them, unless they are first afforded a due process hearing to contest the termination. (Plaintiffs' Statement of Their Positions as to Preliminary Injunctive Relief [hereinafter, "Plaintiffs' Statement"], at 12.) They argue, however, that none of the other groups of child care workers should be denied relief.

With respect to some of the categories of child care workers at issue, the court agrees with Plaintiffs that there is no principled reason for excluding them from coverage. First, any school teacher or school administrator in a public, private, or parochial school who is not by law entitled to a hearing before termination stands to be deprived of the right to continue in his profession as the result of an indicated finding. Such persons should be afforded the pre-deprivation review and expedited review proceedings which the parties have negotiated. For similar reasons, the court believes workers in non-DCFS licensed facilities are entitled to pre-deprivation review and

3

expedited review proceedings. As the example of A.H. demonstrates, such individuals (and the families they work for) can suffer significant disruption and loss as a result of an indicated finding that is later overturned. *Dupuy*, 141 F. Supp. 2d at 1106-09.

With respect to license applicants and persons pursuing a career in child care, the court is not persuaded that the expedited processes are constitutionally required. Such individuals have expectations, but not existing interests, in working as child care professionals. The "simple example" which Plaintiffs believe "makes the point" supports the court's conclusion on this issue. Plaintiffs present the hypothetical case of an individual, John, pursuing a master's degree in early childhood education who is charged as a perpetrator of child abuse as the result of an incident at the kindergarten where he works as an intern. (Plaintiffs' Statement, at 13-14.) Plaintiffs are correct that the duration of an indicated report could be 20 years; but in this court's view, they are incorrect in their contention that only the expedited review proceedings can prevent this harm to John. John would, like anyone who is the subject of a report of child abuse, be entitled to seek administrative review of that determination in the ordinary course. As noted earlier, all parties expect that the review procedure will be much swifter than the sad examples presented in the evidentiary hearing in this case. A 90-day delay for John is not, in this court's view, of constitutional moment.

Defendant has argued that determining whether an individual falls into these categories—particularly that of persons pursuing a career in child care—would be difficult. Further, Defendant has expressed concern that making the new procedures available to large numbers jeopardizes the likelihood that the processes will work as anticipated. The court agrees with Plaintiff that management concerns do not justify an ongoing constitutional violation. The harm to any individual seeking relief may, however, be balanced against the cost, difficulty, and burden to the Defendant of making such relief available. For license applicants, students, and others pursuing a career in child care, the court concludes that the burdens outweigh the need for

4

expedited processes.

Perhaps the most difficult issue is whether foster parents enjoy a liberty interest in their foster care licenses that requires that they also be afforded the expedited review processes made available in this court's order. Plaintiffs recognize that foster parents do not enjoy a constitutionally protected liberty interest in the placement or continued placement of any particular child in their homes. They argue, however, that there is no logical basis for distinguishing between a day care worker who loses his job due to an indicated report and a foster parent whose foster children are removed from her home, resulting in loss of foster care income. (Plaintiffs' Statement, at 39-40 n.15.) Foster care payments are not intended as income to the licensees, however. To the contrary, Illinois foster home license regulations specifically permit foster parents to work outside the home and require that the foster family have "sufficient financial resources to provide basic necessities for themselves and their own children." ILL. ADMIN. CODE Title 89, Part 402, §§ 402.11(c); 402.12(d)(5)(j). Foster care payments are intended to reimburse foster parents for the services they provide and expenses they incur in providing care to children who are wards of the State of Illinois. Removing children from a foster home results in a loss of those payments, but also relieves the foster parent of the responsibility for providing those services or meeting those expenses. The court concludes that the foster care parent's interest in the use of her license is adequately protected by the licensing procedure and that the expedited proceedings ordered today will not be extended to foster parents.

## III. Burden of Proof

This critical issue occupied a good deal of the parties' attention at the preliminary injunction hearing and the court's attention in its opinion. As the court explained, the disclosure and use of an indicated report based on a "practically nominal" proof standard violates the Plaintiffs' due process rights. 141 F. Supp. 2d at 1139-40. The court will direct, and Defendant understands, that

a heightened decision-making standard will be adopted, one that enforces the language of DCFS's own Manual of Rules and Procedures.

DCFS Rule 300.20, the definitions section, explains that "'credible evidence of child abuse or neglect' means that the available facts when viewed in light of surrounding circumstances would cause a reasonable person to believe that a child was abused or neglected." ILL. ADMIN. CODE Title 89, § 300.20. As discussed at length in this court's opinion, this standard was often understood and interpreted by DCFS investigators as meaning no more than "some credible evidence" or "any credible evidence." Further, the evidence showed some investigators gather and consider only inculpatory evidence and disregard any evidence weighing against an indicated finding.

New draft DCFS procedures provide explicit, comprehensive instructions for assessing the reliability of information uncovered in the investigation, including the significance of professional training; independent verification of non-professional sources of information; sensitivity to the interest a witness might have, and the consistency and plausibility of the witness's statement; consideration of the witness's opportunity to observe; and recognition of the age, developmental stage, and susceptibility to influence of any child witness. (Draft Procedures, § 300.60K, Exhibit 3 to Plaintiff's Statement.) Most important, the new procedures state clearly that a child abuse or neglect investigation requires consideration of "[a]ll evidence that indicates that an incident of abuse or neglect **did or did not occur**." (*Id.* § 300.60L, emphasis in original.) The procedures underscore still further the requirement that exculpatory evidence be considered, directing the investigator to create a matrix having two columns, one for recording evidence suggesting that abuse or neglect did not occur and a second for recording evidence in support of a finding of abuse or neglect.

These changes are clearly appropriate steps. Plaintiffs argue, however, that the court should enjoin the Department of Children and Family Services from any use of the expression

6

"credible evidence" in the regulations. To do otherwise, Plaintiffs urge, would "not properly be respectful" of the appropriate evidentiary burden; could mislead DCFS staff who have used the "credible evidence" standard in an improper way for years; and would confuse the overall evaluation standard with a standard appropriate for assessing the weight of each piece of evidence. (Plaintiffs' Statement, at 15-16.)

The court is sensitive to these concerns, and believes the prudent course might well be for DCFS managers to adopt language that emphasizes the full consideration that its new regulations mandate. The court nevertheless declines to order Defendant to abandon the term "credible evidence." Even where, as here, a constitutional violation has been found, the court should interfere with the operations of a state agency no more than necessary to remedy the violation. Substantive changes to the investigation procedures are far more important than terminology. Thus, although it might be advisable for DCFS to use a new expression for the evidentiary burden, such a change is not required to afford relief.

The court will, however, direct Defendant to adopt and maintain a standard that entails consideration of all available evidence, both inculpatory and exculpatory, for its child abuse and neglect investigations.

## IV.  Notices

As discussed in this court's earlier opinion, the notices DCFS issued to alleged perpetrators were inadequate for several reasons. 141 F. Supp. 2d at 1098, 1104-05, 1137-38. In the negotiation process, the parties devoted significant effort to drafting revised notice forms and largely agreed to changes that address the court's concerns. Plaintiffs acknowledge that the revised forms "reflect appropriate corresponding relief." (Plaintiffs' Statement, at 17.) For the reasons set forth above, the court will direct that the new Notice of Intent to Indicate Questions and Answers be amended to include school teachers and administrators (other than tenured public

school teachers) and workers in non-DCFS licensed facilities as "child care workers" who are entitled to the Administrator's teleconference (described below) and expedited review process. Further, the court will direct that such notices be timely, as Plaintiffs have requested.

## V.  Disclosure

Under current state law, disclosure of indicated reports is mandatory when the subject of such a report is an employee of a child care facility, and in many situations, the existence of an indicated report renders the individual presumptively unsuitable for child care employment. 141 F. Supp. 2d at 1103. Plaintiffs urge the court to order that disclosure of an indicated report be stayed when the subject of an indicated report files an appeal. The court declines to order such relief. As explained earlier, disclosure of indicated reports troubled the court because such reports were predicated on the inadequate "credible evidence" standard. The court explained that "[i]f DCFS were to increase the standard of proof necessary to include someone in the SCR, the court expects it would find the disclosure and use more palatable." *Id.* at 1139-40.

Today's order imposes a more vigorous proof standard. It also provides for a limited, telephonic administrative review procedure (described below) before an indicated finding will be recorded for a child care worker. This relief, it is hoped, will substantially reduce the numbers of cases in which a child care worker is indicated for child abuse and neglect based on an "any evidence" or "some evidence" standard and loses his or her liberty interest in employment as a result, only to have the indicated finding overturned months or years later, when the damage to his career cannot be undone.

Although today's order should therefore reduce the numbers of child care workers whose rights are violated, the court has nevertheless considered Plaintiffs' objections to the language used by DCFS in notifying employers of indicated findings and of background checks. In addressing these objections, the court will consider Defendant's March 18, 2002 drafts as his final

8

proposal for such notices. Those versions (Exhibits 12 and 13 to Plaintiffs' Statement; Exhibits D and F to Defendant's Submission), significantly, eliminate any reference to a "presumption of unsuitability" for a worker who is the subject of an indicated finding. Instead, the new notice form directs the employer to complete and return a brief statement of the employer's intention to hire or retain the worker.

Plaintiffs object to the statement that DCFS's determination was made "after consideration of all of the facts." They argue that this expression is inaccurate because the indicated perpetrator will not yet have had an opportunity to provide his understanding of the facts. (Plaintiffs' Statement, at 21.) In fact, after entry of this court's order, a child care worker will have had a brief opportunity to present his or her version of events in a teleconference with a DCFS supervisor or manager. The court nevertheless directs use of the expression "after consideration of the facts reasonably available to this point" in place of the challenged language.

Plaintiffs object, further, to the reference to an "appeal" proceeding. They argue that the word "appeal" improperly suggests that the subject of an indicated report has already had a "trial." They also believe that advising an employer of a possible state court review telegraphs the notion that the child care worker will lose his administrative appeal and that there will be lengthy delays before any final determination. They object to the expression "indicated perpetrators" as language suggesting guilt. Finally, they object to the statement that, absent an expedited appeal, an appeal "may" (rather than "will") be scheduled within the Department's standard procedure.

The court believes many of Plaintiffs' concerns are overstated. The word "appeal" does not always connote a proceeding following a full trial. An appeal will only be scheduled if requested; hence the use of the word "may" in the challenged language is appropriate. The court will, however, direct certain minor revisions to paragraph three of the notices at issue. The court sees neither benefit nor harm in advising an employer of a potential court proceeding, and has therefore deleted the last sentence of the paragraph for brevity. The remaining changes are self-

9

explanatory:

> Persons who have been indicated for child abuse or neglect have the right to seek further review of this determination ~~by requesting an appeal the indicated finding~~ through the Department's administrative appeal process. ~~Indicated perpetrators~~ <u>Any person indicated for child abuse or neglect</u> who work<u>s</u> with children ha<u>ve</u>~~s~~ the right to an expedited appeal process in which the Department's final administrative decision is rendered within 45 days of the request for an appeal unless the <u>indicated person</u> ~~appellant~~ requests and/or agrees to a continuance. If an expedited appeal is not requested, then an appeal may be scheduled within the Department's normal scheduling process and a final administrative decision rendered within 90 <u>days</u> of the request for an appeal unless the <u>indicated person</u> ~~appellant~~ requests and/or agrees to a continuance. ~~A person has the right to appeal the Department's final administrative decision to the Circuit Court~~.

Plaintiffs also object to the language of the form Defendant has proposed for completion and return by the employer or potential employer of an indicated person. That form directs the employer to choose from two options and notify DCFS either that "[w]e will not be hiring/retaining this person" or that "[w]e wish to hire/retain this person and are willing to discuss the necessity for and/or terms of a protective plan." The court respectfully disagrees with Plaintiffs' assertion that this language demonstrates that the potential employer *must* agree to a protective plan as a condition of retaining the worker. (Plaintiffs' Statement, at 25, 27.) Nor does this language impose the condition successfully challenged in *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994), cited by Plaintiffs. In *Valmonte*, plaintiff was presumed ineligible for work as a child care employee as the result of an indicated finding made under the "any credible evidence" standard that this court has enjoined. Employers wishing to hire plaintiff were asked not merely to make a checkmark expressing their willingness to discuss a plan, but "to explain the reasons why [they wished to hire her] in writing." 189 F.3d at 1001.

Nor does the court agree with Plaintiffs that the form is inadequate to the extent that it does not set forth limitations on what may be demanded as part of a protective plan. Fair and effective regulators will craft different (and presumably the least restrictive appropriate) conditions for each

situation.² Moreover, a list of possible proposed conditions would, in this court's view, be a greater disincentive for an employer to hire or retain an indicated person than would Defendant's substantially neutral response form.

Finally, Plaintiffs contend that Defendant has not proposed any form of notice to the employee regarding the information being given to the employer. The court notes, however, that the employer notice forms drafted by Defendant include "cc: employee" in the lower left corner. The court believes that receipt of a copy of the employer notice, together with the notices sent directly to the subject of a report of abuse or neglect, are adequate to notify the individual of his or her rights and of the potential consequences of the investigation.

## VI.  Opportunities to Be Heard

### A.  Pre-Deprivation Administrator's Conference

In the negotiation sessions, the parties and the court struggled with the statutory requirement that an indicated report be maintained in the Central Registry and disclosed to potential employers even before any formal appeal or review process. Due process requires that before an individual is deprived of a liberty interest, he or she is entitled to notice and to some opportunity, appropriate to the nature of the case, to be heard. With objections reserved on both sides, the court and parties proposed what is referred to here as an "Administrator's conference," which would be conducted by telephone prior to the entry of an indicated finding for any child care worker. Prior to the conference, the worker receives a copy of the Family Assessment Factor Worksheet ("FAFW") which sets forth the facts gathered by the Department that form the basis for

---

² The court adheres to its conclusion that in the licensing context, a protective plan is "voluntary" when the license holder agrees to the plan under a threat that her license will otherwise be revoked. Plaintiffs do not challenge the adequacy of the license revocation procedures. They do argue that a license revocation threat is false or illegitimate because DCFS would not actually seek revocation based solely on the refusal to agree to a protective plan (Plaintiffs' Statement, at 25-26 n.10); but in this court's view, the fact that a revocation proceeding is unlikely makes the imposition of a protective plan less troublesome, not more so.

11

the potential indicated finding. A DCFS manager or supervisor – one who has had no part in the child abuse or neglect investigation – presides over the conference, at which the worker has the opportunity to respond to the allegations and to the basis of the intent to indicate him or her. The worker is entitled to be represented by counsel, but not to cross-examine witnesses or present witnesses in his or her own behalf. Moreover, as noted, the conference would be conducted by telephone rather than in person. If the previously-uninvolved administrator or manager who conducts this telephone conference concurs with the investigative staff's conclusion, the report will be indicated and registered in the State Central Registry. No full due process hearing is available until after the report is indicated.

As noted, both sides have reserved objections to this proposed procedure. Plaintiffs believe that the loss of a liberty interest occasioned by disclosure of an indicated report requires the conclusion that such disclosure may be made only after a full due process hearing which includes the right to confront and cross-examine witnesses. Defendant stands by his position that the interest in protecting children from child abuse and neglect outweighs any interest on the part of child care workers in maintaining their employment pending a full hearing. For the reasons discussed at length in the court's earlier opinion, Defendants' objection to this conference procedure are overruled.

Plaintiffs' objections will also be overruled at this time, without prejudice to revisiting the matter if history proves the conferences ineffective at addressing the error rate which troubled the court. Contrary to Plaintiffs' skepticism, the court believes it is at least probable that the conferences will in fact eliminate some of the gross errors described in the court's earlier opinions. Plaintiffs presented evidence of dozens of incidents in which it appeared very likely that a fresh look at the record by a neutral reviewer would have resulted in a changed outcome.[3] Plaintiffs are

---

[3] The example of M.K. and R.K. spring to mind. M.K., is a child care provider whose
(continued...)

concerned that a child care worker against whom a report has been made will not necessarily be told who provided inculpatory evidence against him, but the court notes that the worker will have access to the worksheet which summarizes the evidence on which the investigator has relied. The court agrees with Plaintiffs that assessment of whether the teleconferences reduce the rate of error will require some ongoing reporting and that it may be necessary for such reporting to be made on a regional or county-by-county (rather than state-wide) basis.[4] The court strongly disagrees, however, with Plaintiffs' assertion that if only a small percentage of child care workers request such a conference, and a smaller number proceed to due process hearings, this would demonstrate that DCFS is affording inadequate notice or discouraging child care workers from seeking relief. The court expects that reduced numbers of review proceedings would result from better-trained, more careful investigators. Better investigations and use of a more rigorous proof standard will result in fewer cases where any review proceeding is desired or necessary.

Plaintiffs have requested additional safeguards to ensure that the Administrator's conference is effective. The court agrees that (a) the Director should permit the conference to be rescheduled at least one time for good cause; (b) the FAFW should set forth all bases on which the investigator will rely for indicating a report; (c) the Director should allot up to one hour for each conference; (d) the child care worker is entitled to be represented by an attorney and to present

---

[3](...continued)
facility with sign language renders her particularly capable of caring for special needs children. M.K. and her husband, R.K., were indicated for an incident of alleged sexual abuse, despite the facts that there was no physical evidence of abuse; the victims' guardian, who had accused the K.'s, sought out their care even after the purported incident; and the guardian's failure to pay the K.'s for the children's care gave her a motive to fabricate. Most significantly, the victims were not at the K.'s home on the day of the alleged abuse and had not been there for at least two weeks before it allegedly occurred. There was no evidence that the DCFS investigator had attempted to corroborate any of this information before recommending an indicated finding, but the court thinks it likely that an independent supervisor might well have done so. 141 F. Supp. 2d at 1135.

[4] At the court's suggestion, the parties will make their proposals regarding reporting only after entry of this court's preliminary injunction order. (Plaintiffs' Statement, at 58.)

13

evidence the worker or counsel deems relevant; (e) the Administrator who conducts the conference will have authority to enter an indicated finding, overturn the recommendation, or return the matter for further investigation; and (f) the worker will receive prompt notice of the Administrator's determination. Plaintiffs ask, in addition, that the Director accommodate persons unable to access a telephone or who require translation. In this court's view, a person responsible for the care of children will also be capable of obtaining access to a telephone. An individual who needs translation can be expected to secure such services on his or her own, but the Director should permit an interpreter to participate in the teleconference if one is needed, in addition to the child care worker's attorney.

### B.  Post-Deprivation Hearings

The Department's Rules provide for a prompt hearing after an indicated finding. Specifically, under Rules effective June 1, 2000, an individual who appeals such a finding is entitled to a hearing and decision within 90 days. ILL. ADMIN. CODE Title 89, Part 336 § 336.220(a). The parties dispute whether the court should enter an order specifically enforcing that regulation. The experience of Plaintiff class members who presented evidence in the hearing in this case generates concern that only a court order will address the inexcusable delays recognized by this court and others. *See Cavarretta v. Department of Children and Family Servs.*, 227 Ill. App. 3d 16, 26-27, 660 N.E.2d 250, 256-58 (2d Dist. 1996); *Stull v. Department of Children and Family Servs.*, 239 Ill. App. 3d 325, 335-36, 606 N.E.2d 786, 793 (5th Dist. 1992). The court nevertheless agrees with Plaintiffs that no specific injunction commanding obedience to Defendant's own rule is necessary to support the conclusion that systematic violations will constitute contempt of this court. (Plaintiffs' Statement, at 46.)

In their negotiation sessions, the parties addressed more rapid post-deprivation hearings for the child care workers discussed here, who are deprived of liberty interests by erroneous

14

indicated reports. Defendant proposed a 45-day time frame for these expedited post-deprivation hearings. Plaintiffs urge that it is unreasonable to expect that an employer will desist from acting on the indicated report, or hold a worker's job open, for 45 days. They urge the court to direct that such an expedite proceeding be concluded within 21 days of the date that the worker seeks to appeal.

Having reviewed the parties' competing time lines for the expedited appeal process, the court believes that the swiftest reasonable process will consume five full weeks, or 35 days from the date the Department's Administrative Hearing Unit receives a notice of appeal. This time frame assumes approximately seven days for the Department to set a hearing date and provide a copy of the investigative file to the appellant; another seven days for the appellant to prepare for a pre-hearing conference at which subpoenas will issue; at least seven more days before an approximately two-day hearing will take place; seven more calendar days (that is, no fewer than five working days) for the Administrative Law Judge to issue a recommended decision, and finally, another seven days for review of the ALJ's decision by the Director's office. The court's order therefore provides that the expedited post-deprivation appeal process should be completed within 35 days from the date that an eligible child care worker requests an appeal.

Noting the history of egregious delays in the resolution of appeals from indicated findings, Plaintiffs urge the court to include "some built-in remedy for non-compliance." (Plaintiffs' Statement, at 50.) The only specific suggestion for such a remedy that they have made is one that Defendant has categorically rejected: expungement of the indicated report. The court shares Plaintiffs' conviction that lengthy delays in review of reports ultimately held unfounded can be enormously prejudicial to child care workers, their families, and the children for whom they care. The court is less certain that in all instances where a long appeal process ends in a reversal of the indicated finding, the child care worker is innocent of the charges. In all instances, however, children are victims, either because of the disruption and pain caused by the loss of an innocent

15

and well-qualified care giver who is the target of an unfounded report, or because long delays or poor investigations result in the Department's inability to prove charges against guilty parties.

In light of these considerations, the court is unwilling at this time to impose Plaintiffs' proposed remedy of expungement after delays of ten months or more. The court hopes that the result of this order and the Department's own fervent intentions will be that the overwhelming majority of cases are resolved in 90 days. Should history demonstrate a pattern of non-compliance, however, the court will entertain a renewed motion for imposition of some form of self-executing sanction.

## VII. File Redaction

As described in the court's earlier opinion, Defendant's practice of heavily redacting investigative files deprives persons charged with abuse or neglect of notice of the evidence against them. The parties addressed this issue in their negotiation meetings, as well. As the court understands their position, Plaintiffs agree that much of the information listed in Defendant's "Redaction Checklist" may be withheld from persons appealing their indicated findings, without any violation of due process. (Plaintiffs' Statement, at 51-52; "Redaction Checklist," Exhibit 16). They urge that only three of the 15 types of information must be disclosed: "reporter information," "source information," and "OPWI ("other persons with information") information."

Defendant argues that state law prohibits disclosure of this information, but the statute he cites does not require such a conclusion:

5/7.19. Copies of report to subject

§ 7.19. Upon request, a subject of a report shall be entitled to receive a copy of all information contained in the central register pertaining to his case. However, the Department may prohibit the release of data that would identify or locate a person who, in good faith, made a report or cooperated in a subsequent investigation. In addition, the Department may seek a court order from the circuit court prohibiting the release of any information which the court finds is likely to be harmful to the subject of the report.

16

325 ILCS § 5/7.19. Department Rules may require that the information at issue here be withheld, but those Rules themselves recognize the need for disclosure in some circumstances.[5] This court will require disclosure consistent with the Illinois statute. Thus, the Department is directed to identify the source information, including information from other cooperating individuals. The Department will not be required to disclose which of the individuals who have provided information in the investigation was the "reporter," except by way of the procedure set out in the Department's Rules. ILL. ADMIN. CODE Title 89, § 431.60(a).

## VIII. Retention of Indicated Reports Central Register

At the hearing on this motion, Plaintiffs presented evidence that in some instances, indicated reports that had expired by operation of law or had been ordered expunged nevertheless remained listed in the State Central Register. Defendant has now proffered the affidavit of Linda Everette-Williams, the Administrator of the SCR, in which she states that "a computer program has been developed, and is currently in use" that prevents disclosure of expired or expunged reports. (Affidavit of Everette-Williams, Exhibit 17 to Plaintiffs' Statement.)

Plaintiffs are unsatisfied by this language and insist the court must nevertheless enter an injunction concerning this matter. Absent some showing that the process developed by Ms. Everette-Williams' staff is somehow ineffective, however, the court is not inclined to order Defendant to take action he has acknowledged is his lawful obligation.

## IX. Additional Requests for Relief

Finally, Plaintiffs' Statement refers to a number of additional matters discussed in the

---

[5] For example, ILL. ADMIN. CODE Title 89, § 431.60(a) provides, in part, that "the identity or location of persons reporting or cooperating in such investigations shall not be provided to any subject, unless a subject appeals an indicated finding and an administrative law judge determines that the lack of such information would prejudice the appellant's case or violate due process of law principles." Further, § 431.70(b) specifically identifies such circumstances as an exception to the requirement that source information be kept confidential.

parties' mediation sessions. The court understands some of these matters as relevant to the overall dispute between the parties, but not specifically this motion for preliminary injunctive relief. Absent agreement between the parties or a fully developed record, the court declines to impose additional terms. Plaintiffs' request for the following additional provisions is therefore denied without prejudice:

(1) An order requiring specific additional notice to persons found "not-responsible" in DCFS investigations of a facility;

(2) Corrective notice to all persons contacted during an investigation, after a report has been expunged;

(3) A specific protocol for the pre-hearing process;

(4) Notice advising child care workers of their right/need to appeal an indicated report even if other court processes are pending;

(5) Direction that DCFS establish a procedure through which a child care worker can seek review of a protective plan;

(6) Requirement that DCFS permit Plaintiffs' counsel to review any changes in notices, forms, or training materials two weeks in advance of their implementation.

Finally, Plaintiffs believe the court should order that for persons who are or were child care workers, DCFS must grant "new expungement hearings on their indicated reports at any time" – in some cases, as long as 20 or even 50 years after the report is placed in the State Central Registry. (Plaintiffs' Statement, at 61.) The court declines to impose such a requirement as part of this order, for several reasons. Most importantly, the evidence presented at the hearing did not relate to harm suffered on an on-going basis by persons indicated for child abuse or neglect in the past. The focus of Plaintiffs' evidence, instead, was on the plight of child care workers against whom reports were made based on an inappropriately low evidentiary standard, often without any consideration of available exculpatory evidence. Reports based on this low standard were

18

disclosed to licensing authorities and employers without any opportunity for the accused person to challenge the findings. The wrong done by these reports was gravely exacerbated by long delays in the appeal process.

Significantly, in nearly every instance explored at the hearing, the challenged report was in fact overturned in DCFS's own internal review or on appeal. That evidence suggests that when appropriate due process review occurs, mistakes made in the investigative stage (which have often had severe consequences) are ultimately corrected. It suggests, further, that although the "credible evidence" standard violated Plaintiffs' rights as applied in the investigative stage, that standard as applied on appeal resulted in ultimate exoneration.

Certainly members of the Plaintiff class, who are or were child care workers, and are awaiting appeals, are entitled to prompt relief. The court is far less certain that a person found to be a perpetrator of child abuse in, say, 1999, is now entitled to seek review of that determination.

## CONCLUSION

A preliminary injunction order will be entered consistent with the conclusions addressed in this opinion.

ENTER:

Dated: July 10, 2003

REBECCA R. PALLMEYER
United States District Judge

(dupuyinjunction.opn)

19