IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA DUPUY, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 97 C 4199 |
| | ) | |
| v. | ) | |
| | ) | JUDGE REBECCA R. PALLMEYER |
| BRYAN SAMUELS, etc. | ) | |
| | ) | |
| Defendant. | ) | |

NOTICE OF FILING

TO:   Barbara L. Greenspan
      James C. Stevens
      Assistant Attorneys General
      Child Welfare Litigation Bureau
      100 W. Randolph Street, Suite 11-200
      Chicago, IL 60601

        **PLEASE TAKE NOTICE** that on Friday, July 15, 2005, I filed with the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, 60604, the attached PLAINTIFFS' MOTION FOR:   (A) ENTRY OF A FINAL JUDGMENT, INCLUDING PERMANENT INJUNCTIONS IN DUPUY I, DUPUY II, AND DUPUY III; AND (B) RELIEF PURSUANT TO FED. R. CIV. P. 65, INCLUDING THE CONVERSION OF THE PRELIMINARY INJUNCTIONS IN DUPUY I AND DUPUY II INTO PERMANENT INJUNCTIONS AND AN ORDER BARRING REPETITION OF ANY EVIDENCE PREVIOUSLY INTRODUCED HEREIN AT ANY TRIAL RESPECTING SUCH CONVERSION. (At the direction of the court at the June 9 hearing herein, this motion is not being noticed for hearing, but rather filed and served on counsel for defendant. At the same time, the court's oral directions at the June 9 hearing anticipate that this motion will definitely be one of the matters discussed at the Fed. R. Civ. P. 16 conference the court has set for July 27, 2005 at 4 p.m.).

                                        Robert E. Lehrer
                                        One of the Attorneys for Plaintiffs

Robert E. Lehrer
Diane L. Redleaf
LEHRER & REDLEAF
36 S. Wabash Avenue, Suite 600
Chicago, IL 60603
(312) 332-2121

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Robert E. Lehrer, certify that I am one of the attorneys for plaintiffs and that on Friday, July 15, 2005, a copy of the attached Motion was served upon the attorneys to whom the accompanying Notice of Filing is directed. Service was by personal delivery.

Robert E. Lehrer
_____
Robert E. Lehrer

Robert E. Lehrer
Diane L. Redleaf
LEHRER & REDLEAF
36 S. Wabash Avenue, Suite 600
Chicago, IL 60603
(312)332-2121

Jeffrey B. Gilbert
JOHNSON, JONES, SNELLING,
GILBERT & DAVIS, P.C.
36 S. Wabash Avenue, Suite 1310
Chicago, IL 60603
(312) 578-8100

Jack L. Block
M. Marshall Seeder
Andrew Mathews
SACHNOFF & WEAVER, LTD.
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BELINDA DUPUY, et al,            )
                                      )
         Plaintiffs,          )     **No. 97 C 4199**
                                      )
     v.                           )
                                      )     **JUDGE REBECCA R. PALLMEYER**
BRYAN SAMUELS, etc.,         )
                                      )
         Defendant.         )

**PLAINTIFFS' MOTION FOR: (A) ENTRY OF A FINAL JUDGMENT, INCLUDING
PERMANENT INJUNCTIONS IN DUPUY I, DUPUY II, AND DUPUY III; AND (B) RELIEF
PURSUANT TO FED. R. CIV. P. 65, INCLUDING THE CONVERSION OF THE
PRELIMINARY INJUNCTIONS IN DUPUY I AND DUPUY II INTO PERMANENT
INJUNCTIONS AND AN ORDER BARRING REPETITION OF ANY EVIDENCE
PREVIOUSLY INTRODUCED HEREIN AT ANY TRIAL RESPECTING SUCH
CONVERSION**

Pursuant to Fed. R. Civ. P. 54 (c) and Fed. R. Civ. P. 65(a)(2), plaintiffs move this court for:

(A) entry of a final judgment in this case, including permanent injunctions in Dupuy I, Dupuy II, and

Dupuy III; and (B) relief pursuant to Fed. R. Civ. P. 65, including (i) making all the evidence

admitted upon plaintiffs' applications for preliminary injunctions in Dupuy I and Dupuy II part of

the record on the trial on the merits of the entire case (to be scheduled in light of this motion for

entry of a final judgment in the case); (ii) converting the preliminary injunctions entered in Dupuy

I and Dupuy II into permanent injunctions; and (iii) barring repetition of any evidence previously

introduced herein at the hearings on plaintiffs' motions for preliminary injunctions in Dupuy I and

Dupuy II at such trial.

In support of this motion, plaintiffs state as follows:

1.      Plaintiffs in this case are a certified class of persons who have been, are, or will be

indicated as perpetrators of child abuse or neglect and/or are subject to so-called "safety plans" that

the Illinois Department of Children and Family Services ("DCFS") imposes upon families. See

Order (March 22, 1999) (certifying class); Order (April 16, 2004) (expanding defined class). The

defendant is the Director of DCFS (the "Director").

2.     This litigation has been litigated in three phases, which the court and parties often

refer to as Dupuy I, Dupuy II, and Dupuy III.

(a)     The Dupuy I plaintiffs are child care employee members of the plaintiff class.

Following an 18-day trial that generated a "massive record," Dupuy v. McDonald, 141 F.Supp.2d

1090, 1106 (N.D. Ill. 2001), this court entered a declaratory judgment (reported at id., and including

numerous findings of fact and conclusions of law) that the Director's challenged "core policies" (i.e.,

his "indicated report decision making policies," his "notice and hearing policies," and his "disclosure

and use" policies) violated the Dupuy I plaintiffs' due process rights. Then, following protracted

mediation conferences over which the court presided, it entered a mandatory preliminary injunction

on behalf of the Dupuy I class members. Memorandum Opinion and Order (docketed July 11,

2003); Preliminary Injunction Order (docketed July 14, 2003). Both plaintiffs and the Director

appealed entry of this Injunction Order, which the court of appeals affirmed, except, significantly,

that it substantially expanded the class of persons entitled to the expedited relief this court had

awarded most other Dupuy I child care employees. Dupuy v. Samuels, 397 F.3d 493, 509-512 (7th

Cir. 2005).

(b)     The Dupuy II plaintiffs are members of the plaintiff class who have been, are

being, or will be subject to safety plans that DCFS imposes. As they had in Dupuy I, plaintiffs

moved for a preliminary injunction in Dupuy II against policies and practices respecting safety plans

that the Dupuy II plaintiffs had challenged as violative of their due process rights. There ensued an

2

even longer evidentiary hearing than in Dupuy I (22 days) and an even more "massive" evidentiary record than in Dupuy I. On March 13, 2005, this court entered a declaratory judgment in Dupuy II in plaintiffs' favor and against the Director. Memorandum Opinion and Order (March 13, 2005) (the "March 13 Dupuy II Order"). The March 13 Dupuy II Order granted, in part, plaintiffs' motion for a preliminary injunction. Id. at 1. While the court did not then enter corresponding injunctive relief, it unequivocally declared that "plaintiffs are entitled to injunctive relief." March 13 Dupuy II Order at 59; accord at 36 (same). Pursuant to the court's direction in the March 13 Dupuy II Order (at 59), or with the court's subsequent approval, both plaintiffs and the Director filed written submissions respecting that order. In his submission, the Director took the position--remarkably in light of this court's declaration to the contrary in the March 13 Dupuy II Order--that the Dupuy II plaintiffs were not entitled to any injunctive relief. Plaintiffs filed their response on June 8, 2005. That submission included (as Ex.1) a proposed Preliminary Injunction Order. This court currently has under advisement the question of the injunctive relief it should award plaintiffs, and that question will be the one of the subjects before the court at the Rule 16 conference it has set for July 27, 2005. In light of this court's declaration in the March 13 Dupuy II Order that "plaintiffs are entitled to injunctive relief," and this court's oft-expressed intention to enter such relief as promptly as possible (in light, among other things, of the duration of the Dupuy II phase of the litigation alone), it seems to plaintiffs likely that the court will enter a preliminary injunction in favor of the Dupuy II plaintiffs reasonably following the July 27 conference.

(c)     Dupuy III raises several issues, but the principal one is to what extent, if at all, the due process protections this court afforded the child care employees in the Dupuy I Preliminary Injunction Order should be extended to the non-child care employee members of the

3

plaintiff class. The relief in question includes, among other things, the right of the <u>Dupuy III</u> class members to expedited relief (including Administrator's Conferences) attending the indication of reports of child abuse and neglect against them, the right to have reports indicated against them decided based only on a "heightened credible evidence standard" burden of proof, the right to adequate notice of the indicated report and their appeal rights, and the right to a timely appeal decisions. <u>See</u> ¶5(b) below. More than six months ago, on December 21, 2004, plaintiffs initiated discovery in <u>Dupuy III</u>. But the issues <u>Dupuy III</u> raises have not been litigated before the court, by way of an evidentiary proceeding (as in <u>Dupuy I</u> and <u>Dupuy II</u>) or otherwise, much less resolved by it.

3.      At the June 9, 2005 hearing, one of the counsel for plaintiffs (Mr. Lehrer), following an earlier suggestion of the court, urged the scheduling of a conference pursuant to Rule 16 that would be "directed at . . . entry of a final judgment in this case, as to all aspects of the case, <u>Dupuy I</u>, <u>Dupuy II</u>, [and] <u>Dupuy III</u>." Tr. (June 9, 2005) at 12. He further explained that prior to the conduct of any Rule 16 conference, plaintiffs anticipated making certain written submissions, including a motion, pursuant to Rule 65(a), to "make all the evidence introduced at the two protracted preliminary injunction hearings [in <u>Dupuy I</u> and <u>Dupuy II</u>] part of the [trial] record on any hearing your Honor might have on the entry of a permanent injunction [in Dupuy I and <u>Dupuy II</u>]." Id. at 12-13. The court agreed that the conduct of a Rule 16 conference was appropriate, <u>id.</u> at 12, and directed "plaintiffs to file whatever motion[s] . . . they might want to file [in connection with the Rule 16 conference] by the [July] 12th [status date] . . . ." Id. at 18. This motion is obedient to the court's direction in that it was filed with the court and served upon defendant's counsel on July 15, 2005. While, at the court's direction, it is not formally noticed for hearing at the July 27 conference,

4

the courts directive at the June 9 hearing herein (Tr. at 18-19) plainly anticipated that this motion will be the subject of discussion at the at the July 27 Rule 16 conference.

4. Rule 54 (c) provides in relevant part that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled . . . . ."

5. Under Rule 54(c) and 65(a)(2), plaintiffs are entitled to the following relief as part of the final judgment that, by this motion, they request.

(a) The conversion of the preliminary injunctions in Dupuy I and Dupuy II to permanent injunctions. The trial record for entry of permanent injunctions in Dupuy I and Dupuy II includes evidence already introduced either at the hearings on their motions for preliminary injunctions in Dupuy I and Dupuy II, or made part of the evidentiary record as a result of either plaintiffs' or defendant's submissions, e.g., defendant's first, second and third compliance reports, evidence in support of plaintiffs' motions for compliance relief, and defendant's responses thereto. The injunction to be entered would include all of the injunction provision this court has ordered in Dupuy I and Dupuy II (including its remand and compliance orders).

(b) Entry of a permanent injunction in Dupuy III, such an injunction principally to include the extension of most (though not all) of the relief this court has already ordered for child care employee class members in Dupuy I to persons whom DCFS investigates for child and abuse and neglect in their familial capacity ("family members"), regardless of whether DCFS has imposed a safety plan upon such person. Plaintiffs refer to the relief they thereby seek in Dupuy III seek as the "family relief" and the claims to such relief as the "family claims" (to distinguish them from the "child care employee" claims of Dupuy I and the "safety plan" claims of Dupuy II). The principal

5

Dupuy III relief plaintiffs thereby seek to secure for family members includes: (i) Administrator's conferences (or such other pre-deprivation opportunity to be heard as this court deems appropriate) prior to issuance of an indicated report; (ii) adequate notice and a timely right of full hearing following indication (i.e., an enforceable right to a hearing decision within 90 days of the notice of appeal); (iii) an enforceable right to the use of the "heightened credible evidence standard," as this court has defined it to require the full consideration of both exculpatory and inculpatory evidence (including evidence bearing on whether the person against whom a report is recommended is in fact the person who is "responsible" for the abuse or neglect); (iv) investigative case files redacted only in accordance with the court's Dupuy I order. If Dupuy III is fully litigated, plaintiffs may also seek additional injunctive relief on behalf of family members indicated for abuse or neglect against DCFS policies and practices that (plaintiffs claim) unconstitutionally impair their due process right to secure a full and fair expungement hearing on the merits of their appeal from the indicated report against them.[1]

---

[1]     Plaintiffs have denominated these additional claims (or, more precisely, the substantive issues for litigation these claims implicate) in their proposed Rule 16 Report that they served upon defendant's counsel on July 1, 2005. At the June 9 hearing herein, this court directed the parties, in connection with its scheduling, at plaintiffs' request, of a Rule 16 conference, to attempt to agree on the submission of a joint Rule 16 report at least two days prior to the scheduled conference date, July 27, or, if there were no agreement, to submit separate reports. Tr. (June 9, 2005) at 17. Plaintiffs served on defendant's counsel their proposed draft of a joint Rule 16 report on July 1, 2005. Consistent with the court's Rule 16 planning form, which asks about settlement of the case, plaintiffs included in the draft Rule 16 report an outline of settlement principles, the parties' agreement to which would lead to settlement of the entire litigation, and entry of a corresponding final judgment. This outline effectively denominates the additional claims (issues) plaintiffs may litigate in bringing this case to a conclusion, assuming these claims cannot be settled.

An example of such an additional issue that might be the subject of litigation in Dupuy III is DCFS's policy and practice of effectively prohibiting appellants from indicated reports against them from calling children age 13 or under as witnesses on their behalf, even when such children may be the accuser of and only alleged witness to the alleged abuse or neglect in question. But no

(c)      as to all permanent injunctive relief orders, corresponding orders respecting the training of staff, the issuance of implementing rules, regulations and directives, and the submission of compliance reports(unless such provisions are otherwise already included in the permanent injunctive relief orders denominated in (a) and (b) above).

(d)      corresponding declaratory relief, pursuant to 28 U.S.C. §2201

(e)      corresponding findings of fact and conclusions of law, consistently with Fed. R. Civ. P. 52(a).

6.      Rule 65(a)(2) provides, in relevant part, that "any evidence received upon an

---

useful purpose is to be served by denominating all the possible additional Dupuy III issues in this submission. This is for three independently sufficient though related reasons. First, these issues will be denominated in any joint Rule 16 report, or plaintiffs' own report. Second, some or all of these additional issues, which are modest in scope relative to the principal Dupuy III family claim described in the text, may be settled. Third, in exchange for settlement of the referenced principal Dupuy III claim, plaintiffs may be willing to have "carved out" from the litigation entirely, all such additional issues, meaning that the issues would not be further litigated (or litigated at all) in this litigation, or finally resolved in it, but there would be no res judicata bar to litigation of such issues in another case. The right of this court to effect such a result is well-established. Apparel Art Intern v. Amertex Enters, 43 F.3d 5786, 586 (1st Cir.1995). See also Fed. R. Civ. P. 41(a)(2). If settlement of these additional issues and related claims (including their dismissal, under the "no res judicata effect" effect condition referenced above),is not forthcoming, plaintiffs will file an amended pleading identifying the relief they seek in a Dupuy III trial, in obedience to any schedule set for the filing of such a pleading set by the court.

In light of plaintiffs' July 1, 2005 submission to defendant of their outline of principles for settlement of this entire litigation, plaintiffs expect that, by the July 27 Rule 16 conference, defendant's counsel will inform the court whether they have any interest in discussing settlement of this case along the lines plaintiffs have outlined. Depending on what defendant says, the Rule 16 conference the court conducts may look quite different. If the defendant is prepared seriously to discuss settlement based on the principles plaintiffs have denominated, then the Rule 16 conference will be appropriately focused on settlement. If he has no interest in entering into such settlement discussions, then the Rule 16 conference will be appropriately focused on matters such as the resolution of outstanding discovery disputes, and pre-trial scheduling, including, e.g., the close of discovery, the submission of a pre-trial order, and a trial date. Even if settlement is discussed at the Rule 16 conference, however, plaintiffs are of the view that a pre-trial scheduling order should be entered at that time.

application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record in the trial and need not be repeated upon the trial." The Rule thus does not contemplate that a district court has any discretion as to whether to make evidence received on the preliminary injunction motion admissible as part of the trial record. The Advisory Committee Notes to Rule 65 are to the same effect. ("The subdivison provides that . . . evidence received in connection with an application for a preliminary injunction which would be admissible on the trial on the merits forms part of the trial record."). Thus, all the evidence admitted upon plaintiffs' applications for preliminary injunctions in Dupuy I and Dupuy II should be made part of the record on the trial on the merits of the entire case, as plaintiffs request because: (a) all the evidence admitted upon plaintiffs' applications for preliminary injunctions in Dupuy I and Dupuy II is admissible upon a trial on the merits; (b) as to the evidence admitted in the Dupuy I preliminary injunction hearing, the Director has, in any event, waived any argument to the contrary (or, alternatively, the admissibility of this evidence has become law of the case) because he failed to appeal as erroneous the admissibility of any evidence in that hearing, see Huff v. Dobbins, 243 F.3d 1086 (7th Cir. 2001), Schering Corp. v. Illinois Antibiotics Co., 89 F. 3d 357 (7th Cir. 1996) and other cases cited and discussed at ¶9(a) below.

7.    The Advisory Committee notes to Rule 65(a)(2) state that "repetition [at a trial on the merits of evidence received upon an application for a preliminary injunction] is not altogether prohibited," but indicates that the circumstances under which repetition should be permitted are unusual and that repetition should generally not be permitted. Advisory Committee Notes (1966 Amendment) ("In general, however, repetition can be avoided with an increase in efficiency in the conduct of the case and without any distortion of evidence by the parties"). No unusual circumstance

8

warranting the repetition of evidence (such as that the trial will be conducted by a different judge than presided over the preliminary injunction hearings) is present here. Accordingly, such repetition should be barred, as plaintiffs request.

      8.     At the June 9 hearing herein, one of the Director's counsel (Mr. Sullivan) responded at some length to the plaintiffs' counsel's stated intent to file a Rule 65 motion. While the import of Mr. Sullivan's comments not entirely clear, he appeared to advance or imply three principal points.

      (a)    "The Department is [not] waiving its right to trial on issues where it feels that . . . the underlying liability is still something that needs to be resolved through additional evidence . . . . [And it is not waiving its right to trial] on the issue of remedy that ought to be fashioned." Tr. (June 9, 2005) at 14.

      (b)    DCFS may freely and without constraint relitigate liability issues decided by this court in <u>Dupuy I</u> and <u>Dupuy II</u>, <u>See id.</u> at 14, 15 ("Remember . . . some of the. . . evidence that was heard [in <u>Dupuy I</u>] is nine years ago, six or eight years ago. ***And then, some of the issues [in <u>Dupuy I</u> and <u>Dupuy II</u>], we would reserve our right to revisit them on the issue of liability").

      (c)    DCFS's compliance (at the time of trial) with the <u>Dupuy I</u> Preliminary Injunction Order and the (prospective) <u>Dupuy II</u> Preliminary Injunction Order would warrant not only vacating such orders, but refusing to enter any <u>Dupuy I</u> or <u>Dupuy II</u> permanent injunctions at all, or at least sharply limiting the scope of any permanent injunctive relief awarded from that awarded in the preliminary injunction orders. <u>See id.</u> at 14-15. ("The remedy will be tested upon the evidence that exists today, the need for a remedy today . . . . "***So, at a minimum, we would want an opportunity to present to the Court evidence on what an appropriate remedy would be

9

Case: 1:97-cv-04199 Document #: 732 Filed: 07/15/05 Page 12 of 35 PageID #:3468

[today], if there is even a reason for a remedy . . . . ").

9.       As plaintiffs' counsel (Mr. Lehrer) suggested at the June 9 hearing (Tr. at 15),

plaintiffs agreed with Mr. Sullivan's point described in ¶6(a) above, except as such agreement might

be qualified by the factors set forth in ¶10 below. As to plaintiffs' basic agreement, it is no more

than the text of Rule 65(a)(2) implies--i.e., making the evidence received on the application for a

preliminary injunction part of the trial on the merits does not deprive either party of a trial on the

merits and thus, the manifest purpose of the Rule is to limit the presentation of any of  the

preliminary injunction evidence <u>at a trial on the merits</u>, not to dispense with that trial altogether, if

one or both parties seek trial and there is material and admissible evidence they are to introduce at

that trial. <u>See</u> cases cited and discussed at ¶11 below. The Advisory Committee Notes to Rule 65(2)

(1966 Amendment) are to the same effect.[2]

--------------------------------

[2]       The case law under Rule 65(a)(2) indicates, moreover, that the parties are to given
adequate notice of the trial on the merits, and an adequate opportunity to prepare for it, through the
conduct of discovery and otherwise. <u>See</u> <u>Pugsley v. 3750 Lake Shore Drive Cooperative Building</u>,
463 F. 2d 1055, 105 (7th Cir. 1972). Plaintiffs' position will be entirely consistent with the law in
this respect. At the time, if the Director is of the view that he is entitled to long advance notice of
a trial date or a protracted period in which to conduct discovery (<u>e.g.</u>, more than a few months), he
is badly mistaken. Indeed, under the circumstances here, this court would be fully warranted in
cutting off discovery next week in <u>Dupuy I</u>, <u>Dupuy II</u> and some months later in <u>Dupuy III</u>, and still
adequately respect the Director's rights under Rule 65, and to schedule a trial shortly thereafter.
These circumstances include the following: voluminous discovery conducted by both sides in
connection with the <u>Dupuy I</u> and <u>Dupuy II</u> preliminary injunction hearings; the duration of the
hearings in those cases; the duration of the period since the conduct of those hearings, during which
time discovery has never been closed (almost six years since the completion of the <u>Dupuy I</u> hearing;
almost two and one-half years since completion of the <u>Dupuy II</u> hearing); the Director's counsel's
consistent and strong criticism of plaintiffs' counsel for not having asked for permanent relief in
<u>Dupuy I</u> and <u>Dupuy II</u> and plaintiffs' counsel's equally consistent response that they intended to
move for such relief at the earliest practicable time, meaning that the Director's counsel have known
for a very long time that this Rule 65 motion and the companion motion for permanent injunctions
were coming. As suggested, plaintiffs do not propose an immediate cut-off of discovery in either
<u>Dupuy I</u> or <u>Dupuy II</u>. At the same time, the draft of the Rule 16 form they have submitted to
defendant's counsel proposed the completion of all fact (non-expert) discovery in <u>Dupuy I</u>, <u>Dupuy</u>

10.     Plaintiffs do disagree, strongly, with Mr. Sullivan's points described in ¶8(b)(c) above, as the clearly established law contradicts them.

(a)     As to the Director's point (b), there are very substantial constraints on the Director's latitude to relitigate liability issues decided by this court in Dupuy I and Dupuy II. The constraints are indeed so substantial that the additional "evidence" that the Director may be able to introduce on the liability issues decided in Dupuy I and Dupuy II may turn out to be an empty set, or close to it. There are two companion sources of the law imposing such constraints: waiver, law of the case, and judicial estoppel on the one hand; the law under Rule 65(a)(2) itself on the other.

(i)     "[T]he law of the case doctrine . . . provides that courts should [ordinarily] refrain from reopening issues decided in earlier stages of the same litigation," including a trial court's "'own [prior] decisions,'" McMasters v. United States, 260 F. 3d 814, 818 (7th Cir. 2001), citing and quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988). This court's liability rulings in Dupuy I (which were indisputably "merits" rulings, not simply rulings preserving the status quo based on tentative determinations about plaintiffs' likelihood of success on the merits), coupled with the Director's failure to appeal any of those rulings in his Appeal No. 03-3191 (decided by the court of appeals at 397 F. 3d 493, and sometimes referred to herein as the "Dupuy I Merits Appeal"),[3] mean that both the law of the case and waiver doctrines are extremely substantial constraints against the Director's relitigation of the liability issues.  Federation of

_____

II and Dupuy III by October 1, 2005, all expert discovery by March 15, 2006, and the conduct of a trial in the case at any time on or after June 15, 2006, consistent, of course, with the court's available trial time.

[3]      In Dupuy I, the Director appealed only whether the expedited hearing decisions should be issued within 35 days, as this court had ordered. 397 F.3d at 502. Even this issue was a quarrel with the court's remedy, not with any underlying liability determination.

11

Advertising Industry Reps. v. City of Chicago, 326 F. 3d 924, 929 (7th Cir. 2003) (plaintiffs precluded from raising damages issue that they could have raised in earlier appeal; issue was "law of the case"); Huff, 243 F. 3d at 1090 n.5 (plaintiff's failure in her first appeal to challenge district court order limiting her damages precluded her from later doing so; damage issue deemed waived); People Who Care v. Rockford Bd. of Educ.,171 F. 3d 1083, 1088 (7th Cir. 1999) (when Board did not previously appeal authorization in remedial for certain ex parte communications by court-appointed Master, law of the case barred later challenge to such communications); Schering Corp. v. Illinois Antibiotics Co., 89 F.3d 357, 359 (7th Cir. 1996) (when defendants in prior appeal failed to cite certain evidence, they waived attempt to do so in a second appeal; "[i]f they thought it [the evidence] material to the meaning of the injunction they should have challenged its exclusion in the first round"); Hartman v. Duffey, 19 F.3d 1459, 1464-65 (D.C. Cir. 1994) (Wald, J., concurring)("[a] litigant who has sufficient opportunity to raise a challenge on an initial appeal but fails to do so, is deemed to have waived the challenge") (citing many cases). Similarly, while there has, of course, been no appeal yet in Dupuy II, this court's liability rulings in its March 13 Dupuy II Order, which were no less merits rulings than those in Dupuy I, are the law of the case. McMasters v. United States, 260 F.3d at 818. It follows that, in Dupuy II, as in Dupuy I--even assuming that there is no resolution of any appeal that the Director may take in Dupuy II prior to the conduct of any trial plaintiffs' motion for conversion of the preliminary injunction in Dupuy II to a permanent injunction--the Director will still have to overcome the heavy burden of the law of the case doctrine to undo any of the Dupuy II liability rulings. Neither in this court nor the court of appeals, however, has the Director ever referenced any case or described any evidence that might plausibly bring him within the two most familiar exceptions to application of the law of the case doctrine: new and controlling

12

law and "substantial new [previously unavailable] evidence." <u>In the Matter of: Oil Spill by the Amoco Cadiz etc.</u>, 954 F. 2d 1279, 1292 (7th Cir. 1992). <u>See</u> <u>Avitia v. Metropolitan Club</u>, 49 F.3d 1219, 1227 (7th Cir. 1995) ("[a] [district] judge may reexamine his earlier ruling [only] if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it."). There is a good reason for his not having done so: there are no such cases, and there is no such evidence. <u>See also</u> ¶10(a)(iii) & n. 5 below.

        (ii)    "'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . assume a contrary position.'" <u>In the Matter of Thomas V. Cassidy</u>, 892 F.2d 637, 641 (7th Cir. 1990) (citation omitted). This familiar doctrine, which is "intended to prevent . . . [a] perversion of the judicial process is called 'judicial estoppel.'" <u>Id.</u> The doctrine of judicial estoppel bars this court from considering as a basis for reversal of one of its principal liability rulings in <u>Dupuy I</u>, that DCFS investigators had applied the credible evidence standard to "mean that 'any' credible evidence of abuse or neglect is sufficient, and thus, investigators gather only inculpatory evidence and disregard any evidence weighing against an indicated finding." 141 F.Supp.2d at 1135. Significantly, in his appeal from this court's October 21, 2004 fee order (No. 04-4294), the Director stated that he might, on remand, challenge that liability ruling, by showing that, contrary to this court's finding in <u>Dupuy I</u>, "since 1995, the 'credible evidence' standard employed by DCFS to consider both inculpatory and exculpatory evidence, and that in fact, this was how investigators applied the . . . standard." Def. Br. in No 04-4294 at 42. This statement may have been what Mr. Sullivan had in mind when he referred, during the June 9 hearing, to the Director's right "to revisit . . . . [certain] issue[s] of liability" in a trial on

13

the merits. But the Director has no right to revisit this liability issue because, in the Dupuy I Merits

Appeal, he expressly acknowledged that the "heightened credible evidence standard" that the district

court ordered did change DCFS's prior standard, and he vigorously defended the constitutionality

of that "new" standard. Def. Br. in Nos. 03-3071 & 3191 at 27; id. at 28; id. at 32 (describing the

standard that investigators must apply under the Injunction Order as involving "new procedures");

397 F. 3d at 504 ("DCFS maintains that the district court did not abuse its discretion by concluding

that the more rigorous credible evidence standard together with the pre-deprivation Administrator's

conference will ensure the accuracy of indicated reports"). Significantly, the court of appeals

affirmed the district court's order as to the heightened evidentiary standard that due process required

DCFS to employ, as against the employees' plea for a still more rigorous evidentiary standard. Id.

at 505-06. Both the conditions for application of judicial estoppel--that the Director have taken

inconsistent positions, and that he convinced the court to accept his position in the earlier phase of

the litigation, Cassidy, 892 F. 2d at 641, are therefore met.

    (iii)  Rule 65(a)(2) itself sharply delimits the Director's latitude to relitigate

liability issues decided against him in Dupuy I and Dupuy II. The leading case in this district is

Geneva Assurance Syndicate, Inc. v. Medical Emergency Services Assoc., 1992 U.S. Dist. LEXIS

10115 (July 2, 1992) (Williams, J.), and the facts there are such that this court cannot rule that the

Director has any meaningful latitude at all to relitigate in a conversion trial here the liability issues

decided against him in Dupuy I and Dupuy II. In Geneva Assurance, as here, parties had won a

preliminary injunction (after an expedited four day hearing only) and moved that this preliminary

injunction be made permanent. Judge Williams stated that the "key issue for determining whether

a preliminary injunction should be converted to a permanent injunction is whether all parties have

14

had a fair opportunity to present their case . . . ."1992 U.S. District LEXIS 10015*3. Judge Williams concluded that the parties opposing conversion there had been afforded such an opportunity, and so granted the conversion motion. Id. at **3, 19-20. In so ruling, Judge Williams expressly rejected the non-moving parties' arguments against conversion, arguments that are manifestly not even available to the Director here.

First, the non-moving parties argued that "the court there limited discovery and preparation for the preliminary injunction to very narrow issues." Id. at *2. There was no such limitation here; the Director was able to take unlimited discovery over the space of more than four years between Dupuy I and Dupuy II combined and the two preliminary injunctions hearings were in no way materially limited to "narrow issues." Second, the non-moving parties argued that the "court relied upon . . . [evidence that]. . . .would [not be allowed in a trial on the merits]." The Director has never even pointed to any such material evidence here that prejudiced him in any way, and there is none. Third, the non-moving parties argued that "the expedited hearing on the preliminary injunction [which was four days in duration] precluded . . . [them] from presenting all the evidence necessary to establish . . .[their] case . . . ." But the preliminary injunction hearings here were neither expedited nor of short duration. In contrast to Geneva Assurance, where the preliminary injunction hearing was conducted within a few months of the filing of the complaint and lasted four days, id. at **1-4, the preliminary injunction hearings here took 40 days and commenced almost two years after the filing of the complaint (Dupuy I) and more than four years after the filing of the complaint (Dupuy II). Even more significantly, in granting the movant's motion for conversion, Judge Williams expressly rejected the non-moving parties' contention that "conversion would be improper . . . because other evidence [not presented at the preliminary injunction hearing] would be presented at

15

a full trial on the merits." Id. at *14. For that argument to succeed, Judge Williams ruled, the non-moving party must specifically describe the evidence he would introduce, id. at *16, and show that: (a) such evidence was "material" to whether a permanent injunction should be entered, id. at **16-19; and (b) the non-moving party "did not have an opportunity to present" this evidence at the preliminary injunction hearing. Id. at 19; accord, id. at **16-19. Judge Williams ruled that the non-moving parties in Geneva Assurance had not made a single one of these showings, not even specifically describing the evidence they would "present at another trail in this case . . ." Id. at *16, see id. (referring to "vague references to other witnesses and other important documents plaintiffs would present at another trial in the case."). To the extent that the Director has suggested in this litigation that may have additional evidence he wishes to present at a trial in this case, he has not even made the type of showing Judge Williams found plainly insufficient in Geneva Assurance.[4] Finally, in light of the 40 days of evidentiary hearings attending entry of the preliminary injunctions in this case, the Director faces an extraordinarily heavy burden showing that he did not have a full and fair opportunity to present his case, id. at **3, 6; and that any evidence he does proffer as evidence he believes he should be entitled to introduce at a conversion trial is both "material" to

---

[4]       Specifically, in the Director's appeal from this court's October 21, 2004 Dupuy I interim fee award to plaintiffs (No. 04-4294), he engages in an extended reverie (Brief of Defendant-Appellant in No. 04-4294 at 42-50, Exh. A hereto) about "what kind of argument[s] might the Director make" (id. at 42) on remand ultimately to "win"Dupuy I. He claimed this was a possibility, notwithstanding that the "might-make"arguments he invoked covered only a fraction of the litigation landscape, in terms of this court's liability rulings, see ¶10(a)(ii) above (identifying Director's principal "might- make" argument)--and notwithstanding as well what the doctrines of waiver, law of the case, judicial estoppel and the law under Rule 65(a)(2), all discussed above at ¶10(a) above, say about that possibility. Even as to these arguments, however, the Director failed to identify a single witness or a single document (not previously presented or introduced) that he said he wished to present on remand in support of his might-make arguments (id. at 42-50), but he never even committed himself to proffering any specific additional evidence on remand, contending only that he had the "right" to do so, id. at 49, see id. at 42-50.

whether a permanent injunction should be entered, and evidence he did not have an opportunity to introduce previously, id. at **16-19.

11.     As to the Director's point (c) (see ¶8 (c) above), the notion that DCFS's compliance with the Dupuy I Preliminary Injunction Order and the (prospective) Dupuy II Preliminary Injunction Order would warrant not only vacating such orders, but this court's refusal to enter any Dupuy I or Dupuy II permanent injunctions at all profoundly disfigures the federal common law of remedies. While the case law establishes that federal court injunctive decrees (whether mandatory injunctions, like the Dupuy I Injunction Order here) are not to be indefinite, see United States v. Bd. of School Commissioners of the City of Indianapolis, 128 F. 3d 507, 510-511 (7th Cir. 1997), the standard for termination of such a decree (or here, for this court's declining to enter any permanent injunction order in plaintiffs' favor, or for materially modifying the preliminary injunctive relief awarded to afford plaintiffs significantly less relief in a corresponding permanent injunction) is rigorous indeed. It requires at least that the party supporting termination of material relaxation of an injunction show that (s)he has been in sustained (meaning several years duration at least), consistent and full compliance with the injunction order(s) in effect, and has internal compliance policies and practices in place ensuring against a return to his or her old ways. Board of Education v. Dowell, 498 U.S. 237, 249-50 (1991) ("in deciding whether to modify or dissolve a desegregation decree, . . . compliance with previous court orders is obviously relevant;*** "whether the Board has complied in good faith with the desegregation decree since it was entered and whether the vestiges of past discrimination ha[ve] been eliminated to the extent practicable"*** "passage of time [twelve years] enables the District Court to observe the good faith of the school board in complying with the decree"); SEC v. Coldicutt, 258 F.3d 939, 942-43 (9th Cir. 2001) (despite nine years of full

17

compliance with injunction, "more is required"; defendant had "promised not to seek to regain her [trading] licenses," but, if injunction were terminated, "nothing bars her from returning to the securities field at any time"); Alexander v. Britt, 89 F.3d 194, 201 (4th Cir. 1996) ("[o]nly compliance for substantially longer periods [than four years] has been regarded as significant evidence of good faith compliance" warranting termination of decree) (collecting cases); Building and Construction Trades Council of Philadelphia v. NLRB, 64 F.3d 880, 889 (3d Cir. 1995) (after six years of intermittent compliance, "we are unwilling to hold, and BCTC cites no persuasive authority that the mere passage of time and temporary compliance are themselves sufficient to constitute the type of changed circumstances that warrant lifting the injunction"); Patterson v. Newspapers and Mail Delivers Union, 13 F.3d 33, 34-35 (2d Cir.1993) (motion to terminate denied 11 years afer decree's entry, was properly granted after 18 years), cert. denied, 427 U.S. 911 (1994). See Commissioners of the City of Indianapolis, 128 F.3d at 510 128 F.3d at 510 ("Board argues that after thirty years of litigation, and eighteen years of busing, it is time to put this suit on the path to a conclusion by taking a careful look to see whether the litigation and the decree have accomplished their purpose. ***To ensure that the injunction is not dissolved so suddenly as to disrupt the education of the children currently being bused, the board itself proposes to phase it out over a thirteen-year period").

It follows from the cited cases that if the trial on the merits is held in this case at any time in the next few years--and plaintiffs are seeking a trial, if the court deems the conduct of one necessary and appropriate, within the next year--the Director cannot conceivably meet the standard for termination or substantial limiting modification that the case law describes. For one thing, as this court's June 9, 2005 Order, entered June 13, 2005 (the "June 13 Order") granting, in part, plaintiffs'

18

motion for compliance relief establishes, he has not fully complied with the Dupuy I Preliminary

Injunction Order "since it was entered." Dowell, 498 U.S. at 349. For another, even assuming that

he were fully to comply with the prospective Dupuy II Preliminary Injunction from the day of its

entry, his full compliance, by the date of the trial, will be of far too short a duration to warrant any

serious consideration of either vacating that injunction (or entering a Dupuy II permanent injunction

that would afford materially less relief than a Dupuy II preliminary injunction). Further, almost two

years after entry of the Dupuy I Preliminary Injunction Order, the Director has not even promulgated

implementing rules. See June 13 Order at 28 (noting DCFS's failure to have "promulgate[d] rules

. . . that embody all the terms of Dupuy I relief"; ordering the Director to "submit these rules to the

Governor's Office within 60 days of the date of this Order . . . ."). Indeed, far from having made a

concerted, good faith effort to put into place internal compliance mechanisms, the Director first

vigorously opposed appointment of an internal compliance monitor. Then, after agreeing to such

an appointment when this court made clear its view that one should be appointed (Tr. (April 29,

2005) at 81-87), he treated the appointment cavalierly, at best. See Tr. (June 9, 2005) at 5-6 (Ms.

Solomon, the Director's counsel) (explaining failure of previously appointed internal compliance

monitor even to contact plaintiffs' counsel, notwithstanding plaintiffs' counsel's repeated attempts

to arrange a meeting, as attributable to her having "been on vacation during some time in May" and

that she had "recently been offered a job at another state agency," which would preclude her from

being the internal compliance monitor in any event; no new compliance monitor appointed); see id.

at 6 (court: "I am with Ms. Redleaf [plaintiffs' counsel] on this, that we need a compliance monitor

who's not--who really has time to devote to this and to respond promptly. I am disappointed that

if Ms. Sullivan is not going to be that person, that somebody didn't let Ms. Redleaf know that prior

to when she walked in today.")

Respectfully submitted,

*Robert E. Lehrer*

One of the Attorneys for Plaintiffs

Robert E. Lehrer
Diane L. Redleaf
LEHRER & REDLEAF
36 S. Wabash Avenue, Suite 600
Chicago, IL 60603
(312)332-2121

Jeffrey B. Gilbert
JOHNSON, JONES, SNELLING,
GILBERT & DAVIS, P.C.
36 S. Wabash Avenue, Suite 1310
Chicago, IL 60603
(312) 578-8100

Jack L. Block
M. Marshall Seeder
Andrew Mathews
SACHNOFF & WEAVER, LTD.
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000

Attorneys for Plaintiffs

20

No. 04-4294

IN THE
UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

| | | |
|---|---|---|
| BELINDA DUPUY, PILAR BERMAN, NORMAN BERMAN, V.A., and JEFF DUPUY, | ) ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| Plaintiffs-Appellees, | ) ) | |
| vs. | ) ) | No. 97 C 4199 |
| BRYAN SAMUELS, Director, Illinois Department of Children and Family Services, | ) ) ) ) | The Honorable REBECCA R. PALLMEYER, |
| Defendant-Appellant. | ) | Judge Presiding. |

**BRIEF OF DEFENDANT-APPELLANT**

LISA MADIGAN
Attorney General
State of Illinois

GARY FEINERMAN
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for Defendant-Appellant.

ERIK G. LIGHT
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2193

**Exhibit A**

moot due to changed circumstances. But if, before attaining any of these things,
the defendant modifies his behavior independently of any court order so as to
comply with the law, then the plaintiff is not a prevailing party. *See Buckhannon,*
532 U.S. at 610.

## II. The Plaintiffs Are Not "Prevailing Parties" and Thus Are Not Entitled to an Award of Attorney's Fees.

The plaintiffs filed the original complaint in this case in 1997, yet,
remarkably, this case remains in a "preliminary stage of the litigation." *Dupuy I,*
397 F.3d at 506. The plaintiffs have filed two motions for preliminary injunctions
and have suggested on the record that they will file a third such motion. The
district court has held lengthy hearings on both preliminary injunction motions
filed so far. But the court did not consolidate the hearings with the trial on the
merits. Eight years on, the plaintiffs have not sought a date for the close of
discovery, for the filing of dispositive motions, or for trial on the merits of their
claims.

Given this history, it was premature for the district court to award interim
attorney's fees to the plaintiffs based on the August 2003 preliminary injunction
order. At this preliminary stage, the plaintiffs have not achieved "prevailing party"
status. First, the preliminary injunction was not a final determination on the
merits of any claims. It was a provisional determination based on the traditional
preliminary injunction criteria. Second, in arriving at its findings and conclusions
in support of the preliminary injunction, the district court relied on information

39

adduced at a hearing in 1999 concerning conditions as they existed in the mid to late 1990s. Conditions have changed partly due to voluntary actions taken by DCFS independently of the court's orders. It is not certain what the district court's ultimate decision will be. And only when the district court makes a determination on the merits of at least one of the plaintiffs' claims will it be possible to begin to evaluate whether the plaintiffs might be deemed "prevailing parties." And even then, in light of *Buckhannon*'s rejection of the "catalyst theory," it will likely be necessary to wait until the court makes a decision on what final relief, if any, it will award to determine if the plaintiffs have achieved prevailing party status.

The preliminary injunction was just that – preliminary. And that is how the district court has treated it. In its March 2001 decision, the court recited and addressed the traditional elements of a preliminary injunction, including the likelihood of success on the merits and the balance of harm to the parties. *Dupuy v. McDonald*, 141 F. Supp. 2nd 1090, 1130-31, 1141 (N.D. Ill. 2001). (A45-A46, A53).

More important, the federal rules provide a mechanism for reaching the merits on a preliminary injunction hearing, but the court did not use it. The rules allow the court to merge a preliminary injunction hearing with the hearing on the merits. Fed. R. Civ. P. 65(a)(2). But to do so, the district court must first provide "clear and unambiguous notice" to the parties that this is what it is doing. *American Train Dispatchers Dep't of the Int'l Brotherhood of Locomotive Engineers v. Fort Smith R.R. Co.*, 121 F.3d 267, 270 (7th Cir. 1997). Here, the district court did not notify the parties that it was merging the hearing on the preliminary injunction

with the hearing on the merits. Nor has the district court ever suggested to the parties that it had done so.

So the court must still resolve the merits of all of the plaintiffs' claims, including those involved in the first motion for preliminary injunction. When the court resolves the merits, the findings and conclusions it made in granting the preliminary injunction will not bind it. The court may resolve the merits either through dispositive motions or through a trial on the merits. Given the absence of any final determination of the merits of any claim, the plaintiffs are not "prevailing parties." *Smyth*, 282 F.3d at 276 (preliminary injunction based on plaintiff's probability of success on the merits did not render plaintiff a "prevailing party"); *Smith*, 632 F.2d at 346-49 (same); *John T.*, 318 F.3d at 559 (same); *Frazier*, 777 F.2d at 329 (denying claim for attorney's fees for preliminary injunction, stating that plaintiff's "success in obtaining a preliminary injunction cannot be considered separable from or unrelated to her ultimate failure to prevail on the merits of her claim"); *Busbee*, 684 F.2d at 1377 & 1381 (preliminary injunction based on district court's interpretation of law favorable to plaintiffs did not render them "prevailing parties" because their successes were "merely temporary" when the district court ultimately vacated the judgment in their favor); *Planned Parenthood of Minnesota*, 558 F.2d at 871 (preliminary injunction based on probability of success on merits did not justify interim fee award).

Given that the district court has not resolved the merits, the Director is entitled to seek summary judgment, even on the claims raised in the first

41

preliminary injunction hearing. And should the district court determine that a trial is necessary, the Director can seek judgment following a full trial on the merits. In either case, the Director will be able to present evidence and argue that the Department's procedures, as they exist today independently of the preliminary injunction, satisfy due process.

What kind of argument might the Director make? To begin with, the Director would be able to present evidence regarding the agency's procedures as they currently exist. In particular, the Director will be able to present evidence (1) that at all relevant times (*i.e.*, since 1995), the "credible evidence" standard employed by DCFS required investigators to consider both inculpatory and exculpatory evidence and that, in fact, this was how investigators applied the "credible evidence" standard; (2) that pursuant to its "best practices" initiative, DCFS revised its investigatory procedures to include, among other things, explicit direction to investigators to consider all information, both inculpatory and exculpatory; (3) that before the March 30, 2001 order in which the court stated it would grant the preliminary injunction, DCFS changed its rules to require more detailed notice to indicated persons, including notice of the nature of the charge; and (4) that also before the March 30, 2001 order, DCFS adopted a 90-day timetable for making final decisions on challenges to indicated findings.

The record indicates that the Director has an excellent chance at making these four showings. The first point finds strong support in the record of the preliminary injunction hearing, where Ed Cotton, Dr. Lorand, and Dr. Soter all

42

testified that DCFS trained investigators to gather and consider exculpatory information as well as inculpatory information. (Tr.(V23) at 1560-61, 1586, 1598-1603; Tr.(V21) at 1825-26; Tr.(V29) at 2762-63; Tr.(V27) at 2592, 2597). The plaintiffs' only expert witness to testify otherwise, William Ryan, ceased working in the Division of Child Protection in 1991 and left DCFS for good in 1994, and so was not familiar with DCFS investigatory practices during the time relevant to this case (1995 and after). In any event, Ryan admitted on cross examination that DCFS trained its investigators to find evidence against child abuse and to consider the totality of the evidence presented to them. (Tr.(V12) at 192, 203). Furthermore, Cotton, Dr. Lorand, and Dr. Soter testified that investigators followed this training in the vast majority of cases. (Tr.(V23) at 1594-95; Tr.(V29) at 2762-63; Tr.(V27) at 2592, 2596-97). Moreover, to the extent the trial court deems investigatory practices of the late 1990s relevant, the Director can commission a valid statistical study involving a review of DCFS investigations from that time period (something the plaintiffs never did) to show that, in fact, DCFS investigators considered exculpatory information and did not apply an "any credible evidence" standard.

The other three points should not be hard to prove. The second point – that DCFS revised its investigative procedures pursuant to its best practices initiative rather than in response to any court order – finds support in the record. (Doc. 505 at 2697-98, 2860-61; Doc. 322 at 2; Doc. 323, Exh. F). And since what prompted DCFS to revise its investigatory practices was not an issue at the preliminary injunction hearing, the Director will be able to bring to bear more evidence on this

43

Case: 1:97-cv-04199 Document #: 732 Filed: 07/15/05 Page 29 of 35 PageID #:3485

point at trial. As for the third and fourth points, the district court essentially conceded that the Department amended its rules regarding notices and the time frame for appeals independently of the court's orders. *Dupuy,* 141 F. Supp. 2d at 1138-39. (A51-A52).

Based on these facts, the Director will be able to argue that, when considered as a whole and in light of the agency's strong interest in protecting children, the agency's procedures (the current procedures other than those ordered by the district court such as the Administrator's conferences and the 35-day expedited appeal process) comply with due process. As legal support, the Director will be able to point to decisions of the Supreme Court, this Court, and the Illinois Supreme Court. The Supreme Court has recognized that when the government has a sufficiently strong interest, it may temporarily deprive an individual of a liberty interest based on an *ex parte* probable-cause type determination, provided that the government affords the individual a prompt, post-deprivation hearing. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997); *Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 220, 240-41 (1988); *Barry v. Barchi,* 443 U.S. 55, 64-65 (1979). Based on these authorities, the Director will be able to argue that the use of the credible evidence standard (including the requirement to consider both inculpatory and exculpatory evidence) served as a functional equivalent of the probable-cause type determinations approved in *Gilbert, Mallen,* and *Barry;* that the Department's interest in protecting children from abuse and neglect is at least as strong (and actually much stronger)

44

than the government interests in those cases; and that the agency's Amended Rule 336 affords indicated child care workers a sufficiently prompt final decision since it requires that a decision be issued within 90 days of a request for review.

As further support, the Director will be able to point to *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002). In *Doyle,* this Court held that two child care workers stated claims for due process violations. *Doyle,* 305 F.3d at 619-20. The workers alleged that they had been indicated for child abuse or neglect based on a practically nominal credible evidence standard under which the investigator need not weigh conflicting evidence, *id.* at 618-19, and "any plausible evidence of abuse or neglect may produce an indicated finding," *id.* at 618. The workers also alleged they had been required to wait almost a year before obtaining a final administrative decision on their challenges the indicated reports. *Id.* at 611-12.

The Director will be able to argue that the facts adduced at summary judgment or at trial differ significantly from those alleged in *Doyle.* Instead of a practically nominal credible evidence standard operating in conjunction with a year-long appeals process, the Director will be able to point to: the Department's rigorous credible evidence standard; its improved investigatory procedures that explicitly require investigators to consider all evidence for and against a findings of abuse or neglect; its improved notices; and its 90-day appeal process. The Director will argue that, considered as a whole, these policies, procedures, and practices do not violate class members' due process rights.

45

As still further support for judgment in his favor, the Director will cite *Lyon v. Department of Children & Family Servs.*, 209 Ill. 2d 264, 807 N.E.2d 423 (2004). There, the Illinois Supreme Court held DCFS was required to expunge an indicated finding against a teacher where (1) the finding was based on the credible evidence standard (which the court assumed did not involve the consideration of exculpatory evidence), and (2) the Department afforded the teacher an appeals process that took longer than 90 days. 807 N.E.2d at 436. The court stated, however, that if the agency uses the credible evidence standard (again, as understood by the court not to require the consideration of exculpatory evidence), the agency could nonetheless satisfy due process as long as it provided a final administrative decision within 90 days. *Id.* at 437. The court explained that "it is appropriate to place more of the risk of error on adults, who may suffer mistaken employment hardship, than on children, who may suffer additional abuse." *Id.* at 434.

Although decided by a state court, *Lyon* is entitled to as much respect as a federal court decision interpreting the Constitution. *Burgess v. Lowery,* 201 F.3d 942, 945-46 (7th Cir. 2000). And under *Lyon,* if the Director can show both (1) that DCFS employs a more rigorous version of the credible evidence standard, one that requires consideration of exculpatory evidence, and (2) that DCFS complies with the 90-day appeals process, then the Director can show that his agency satisfies due process, even without providing a pre-deprivation hearing. *See Lyon,* 807 N.E.2d at 437. As explained previously, the Director *can* make these showings.

46

In addition to the foregoing, the Director will be able to explore and challenge the factual justifications relied on by the district court for the relief afforded in the preliminary injunction. For example, the district court preliminarily enjoined DCFS to provide child care workers with Administrator conferences before indicating them for child abuse or neglect. It did so to address what it thought was a "staggering" rate of reversal of indicated reports. (A49). First, the Director can argue that the court attached undue importance to this statistic. The 75% reversal rate was not helpful in assessing the risk of error in making an indicated report. That figure related, not to *all* indicated report, but only to those reports where the indicated party sought expungement. But this is a self-selected group. Those who seek expungement are more likely to have stronger cases than those who do not. And in the vast majority of cases, the indicated party declined to seek expungement. The Director may argue that this showed that the Department's procedures did not produce an unacceptable risk of error because, in fact, in the overwhelming majority of indicated reports, the investigator got it right.

Second, because the district court has established no discovery cut-off date, the Director will be able to pursue evidence regarding whether there has been a significant drop in the overall reversal rate that troubled the court. If this turns out to be the case (and the agency's preliminary figures indicate the reversal rate has dropped), the Director will also be able to explore the role, if any, Administrator conferences had in such a drop. In particular, the Director will be entitled to examine how the reversal rate in cases where there have been Administrator's

47

conferences compares with the rate in cases where there has been no such conference. If the evidence shows that the reversal rate has fallen to a similar degree between the two groups, then this will show that something other than Administrator's conferences (such as better investigations produced by the agency's "best practices" initiative) has addressed the concern that motivated the court to require the conferences in the first place. This would be constitute yet another reason not to permanently enjoin DCFS to provide child care workers with Administrator conferences.

As for the 35-day expedited appeal process, in addition to his legal arguments that a 90-day appeal process satisfies due process, the Director can explore factual matters bearing on whether the expedited process is justified. How many child care workers ask for an expedited appeal? Of those who ask, how many ask for extensions of time because the 35-day process is too accelerated? If it is a high percentage, then this would be a practical reason for the court to discontinue the expedited appeal process.

Undoubtedly, the plaintiffs will complain that the Director is speculating about what the evidence may show. But since this case is still in the discovery stage, some speculation is inevitable. The district court must base any permanent injunction on *current* conditions, not conditions as they existed in the mid to late 1990s. *See Davenport v. DeRobertis,* 844 F.2d 1310, 1314 (7th Cir. 1988) ("[T]he judge was required to tailor the equitable relief to the actual circumstances before him, which included the circumstance that the prisoners are now housed in [a new

48

facility]."). As long as there is no established schedule for reaching a final decision on the merits in this case, the issue of whether a permanent injunction is proper continues to recede into the future. Until the court establishes such a schedule, the Director is free to develop theories justifying the denial of permanent injunctive relief and to pursue evidence rooted in current conditions that supports his theories.

This Court need not decide the merits of the arguments the Director has outlined above. That is for the district court to do in the first instance. It is true that, in granting the award of interim attorney's fees, the district court suggested that much of the relief it had ordered was "in many respects permanent in its application." (Doc. 584 at 4). The court also indicated that, once it decided the second motion for preliminary injunction, it did not "anticipate lengthy further proceedings before entry of a final judgment." (*Id.* at 5). Such musings are harmless provided the district court understands that the Director has the right to present evidence and argument on the merits. Indeed, the court's comments are understandable since the court held a lengthy hearing, engaged in a thoughtful analysis, and, as an impartial decisionmaker rather than an advocate, perhaps has not fully considered how the Director might argue in support of final judgment in his favor.

But if the district court believes that the plaintiffs are certain to prevail because Director has no *right* to present additional evidence or make additional argument, then the court is mistaken. The district court never merged the preliminary injunction hearing with the hearing on the merits. So the preliminary

injunction did not constitute a final decision on the merits regarding any claims, and the Director has the right to present evidence on current conditions and to make his argument that he is entitled to judgment. *See Ball Memorial Hosp.*, 784 F.2d at 1340-41 (affirming denial of preliminary injunction and remanding for trial despite concluding that plaintiffs, after a thorough hearing, failed to show they were likely to succeed on merits). The Director may win, in which case the preliminary injunction surely does not render the plaintiffs "prevailing parties." *Smyth,* 282 F.3d at 285-86 (holding that plaintiff who obtained preliminary injunction but ultimately lost on the merits was not a prevailing party); *cf. Petersen v. Gibsen,* 372 F.3d 862, 866 (7th Cir. 2004) (plaintiff who obtained jury verdict and nominal damage award but later, after motion for new trial was granted, entered into settlement with defendant, was not a prevailing party). Because the case remains for determination on the merits, the plaintiffs are not prevailing parties entitled to any attorney's fees.

III. **The Award of Interim Fees To The Plaintiffs Will Multiply the Number of Appeals Over Preliminary Injunctions and Fee Awards and Will Discourage Plaintiffs From Pursuing Swift Resolution of Their Claims on the Merits.**

For the courts of appeals, it is preferable to deal with a single appeal at the end of a case rather than a series of interlocutory appeals. *Pearson v. Ramos,* 237 F.3d 881, 883-84 (7th Cir. 2001). Indeed, the final judgment rule exists precisely to prevent cumulative appeals. *Sonii v. General Elect. Co.,* 359 F.3d 448, 450 (7th Cir. 2004). But if the plaintiffs are deemed "prevailing parties," then several adverse

50